JONATHAN ANDREWS *et al. vs.* INDEMNITY INSURANCE COMPANY OF NORTH AMERICA.

NOVEMBER 16, 1935.

PRESENT: Flynn, C. J., Moss, Capotosto, and Condon, JJ.

CONDON, J. This is an action of debt on a bond given to the sheriff and his deputy to release an attachment. The writ of attachment issued and was served by the sheriff in an action brought by Reuben Berberian against his son Artacky Berberian doing business as the Manufacturers' Supply Company. The property of Artacky Berberian attached in that suit was released upon the acceptance by the sheriff of the bond of the defendant therein with the Indemnity Insurance Company of North America as surety. This bond contained the following provision: "If the final judgment in the action commenced by said writ shall be forthwith paid and satisfied after the rendition thereof (in case said judgment shall be rendered against the said defendant), then this obligation shall be null and void, otherwise shall be and remain in full force and effect."

The case was duly entered in the superior court and was set down for trial on May 4, 1932. On that day the case was called and a jury was impaneled but before any other proceedings were taken, the court rose. The case came on the next day and the parties announced that they had agreed upon a settlement which was contained in a signed stipulation in the following form:

"Defendant submits to judgment for the plaintiff for $1000.00, without costs.
"Enter May 5, 1932."

In accordance with the long established practice in such matters, the trial justice without any hearing of any kind upon the merits of the agreed settlement but solely upon the

representations of counsel for both parties that an agreement had been reached, signed his name to the stipulation after the word "Enter." The clerk's minute book, for the date on which this disposition was made of that case, bears the notation, "The case is taken from the jury and passed." Pursuant to the stipulation judgment was entered for the plaintiff and an execution on this judgment was taken out in due course and served on the defendant. The return was *nulla bona*. Suit was then brought against the surety on the bond.

The defendant filed several pleas to the plaintiffs' declaration in the instant case, only one of which we need consider here. This plea alleged that the judgment obtained in the Berberian case was by agreement between the parties and was not a judgment rendered by the court. The plaintiffs demurred to this plea, the demurrer was sustained and defendant's exception to this ruling was noted. The case proceeded to trial in the superior court before a jury and at the conclusion of the testimony both sides moved for a directed verdict. The court denied defendant's motion and noted its exception. The plaintiffs' motion was granted and the jury, as directed, returned a verdict of $1,500 against the defendant on its obligation under the attachment bond.

Defendant has brought its bill of exceptions assigning certain alleged errors committed by the superior court, but for our purpose we need only consider the exception to the sustaining of plaintiffs' demurrer to defendant's fifth plea and the exception to the denial of defendant's motion for a directed verdict. Since both exceptions raise the same question of law, they will be considered as one.

The plaintiffs contend that the fact that the judgment was thus entered by agreement of the parties does not make it legally any different from one rendered by the court after hearing. They claim that the words of the bond setting out the undertaking should not be construed strictly in favor of the surety but that whether they are or not, a

judgment by agreement of the parties is a judgment rendered and therefore within the terms of the bond.

In so far as the binding effect upon a surety on a bond to release an attachment is concerned, we think there is a difference between a judgment by agreement of the parties only and one rendered by the court. For the purpose of enforcing the obligation of such a surety, there is a material difference between a judgment as contemplated by the words of the bond quoted above and the judgment obtained in the manner described in the Berberian case. The judgment entered in that case, and sued on here, was no more than a compromise between the parties with which the court did not have anything to do and over which it exercised no judicial power other than to authorize the clerk to enter it as a matter of record.

The record correctly states that the case was taken from the jury and passed. That is, the case was no longer before the court for its adjudication. The parties had voluntarily relieved the court of its duty to render judgment by agreeing to strike the case from the calendar and settle it by mutual concessions or compromises between them. This is clearly evident by a portion of the uncontradicted testimony of the witness Artacky Berberian with reference to said settlement on pages 22, 23, 24 and 25 of the transcript in the instant case: "Q. Did you and Reuben Berberian have a conversation relating to the settlement of this case? By this case I mean the case which was being tried May 4th. A. Yes sir. Q. What were those conversations? A. If I agreed to accept judgment, that all our other litigations would be fixed up with the acceptance of this judgment. Q. That was told to you by whom? A. By my father. Q. By Reuben? A. Yes. Q. Reuben is your father? A. Yes. Q. Now I understand your answer correctly to be that the agreement was that if you submitted to judgment all the other litigation would be cleaned up?" . . . "Was any of this litigation pending before the suit was brought on your prior suit? A. This note? Q. Yes?

A. Yes. Q. The other litigation was pending before that was it? A. Yes, sir." . . . Q. And do I understand the claim now, Mr. Berberian, that this other litigation that you spoke of, had been going on prior to the commencing of this suit? A. Yes, sir. Q. And as I understand it—I want to get this correct in my own mind too—as I understand it, your conversation with Reuben Berberian between the evening of May 4th and the morning of May 5th, was to the effect that if you would agree to enter this judgment against you, that he would call off all the other litigation, is that correct? A. Yes, sir." This testimony illustrates quite clearly why a judgment of the kind sued on here cannot be held to meet the requirements of the language of the bond. Here is a defendant sued by his own father as plaintiff. Between them there exists at the time suit is brought a number of disputes in the course of litigation. Notwithstanding that his counsel strongly advises him that he has a good defense to the action brought against him, the son consents to submit to a judgment in consideration of his father dropping the prior litigation. Quite likely it was a good trade for both but where did it leave the surety company which is the defendant here? The answer would seem to be that the surety turns out to be a convenient medium for the disposition of a troublesome number of cases in litigation between father and son in which it has no concern. Can it be that such an arrangement is permitted under the language in the bond given to release the attachment? We think that this is not the rendering of a judgment by the court as contemplated in the terms of the bond. It is a judgment to all intents and purposes as between the parties to the agreement, because it is their own agreement solemnly entered in the records of the court; but such a consent judgment does not bind the surety.

It may be worth while to point out here what some authorities have had to say in distinguishing between consent or confessed judgments and those rendered by the

court. In *Schuster* v. *Rader*, 13 Colo. 329, 22 Pac. 505, the court said: "Discriminating law-writers speak of judgments by confession as being 'entered,' while other judgments are spoken of as being 'given' or 'rendered.'" The term "render judgment" has been defined by an eminent law-writer as follows: "Render Judgment—To pronounce, state, declare or announce the judgment of the Court in a given case or on a given state of facts; not used with reference to judgments by confession . . ." Black's Law Dictionary, (3rd ed.) 1528. And Corpus Juris thus defines "Judgment by consent: A judgment by consent of the parties is a judgment the provisions and terms of which are settled and agreed to by the parties to the action in which it is entered, and which is entered of record by the consent and sanction of the court. It is not the judgment of the court, except in the sense that the court allows it to go upon the record and have the force and effect of a judgment; it is the agreement of the parties, entered upon the record with the sanction and approval of the court, and is their act rather than that of the court." 34 C. J. 129.

We have not found any authorities nor have any been cited to us by either side that squarely considered this point as raised in connection with the attachment bonds containing language identical with or even similar to the one before us, but there are some cases on appeal bonds that by analogy are close to the point in issue. *Foo Long* v. *American Surety Co.*, 146 N. Y. 251, is as close as any. In that case, the defendant was surety on a bond given to stay proceedings on appeal to the general term of the supreme court from a decision by the circuit in a case in which the defendant's principal on the bond was the unsuccessful defendant. In the supreme court the surety's principal obtained a reversal of the decision of the circuit and was granted a new trial. From this decision the other party appealed to the court of appeals, and while this appeal was pending, the parties agreed to entry of a judgment reversing the judgment and order of the general term

and affirming absolutely the judgment of the circuit. In a suit on the bond the surety company defended on the ground that the reversal of the order of the general term, by consent, and the judgment of affirmance entered on the original judgment of the circuit was not an affirmance within the true meaning of the bond. The circuit so held and its judgment was affirmed by the general term, and finally by the court of appeals, all judges in the latter court concurring in the opinion. The unanimity of all these courts on this issue strongly supports the correctness of that decision and is entitled to our serious consideration.

The plaintiffs, however, seek to distinguish the instant case from *Foo Long* v. *American Surety Co., supra,* by pointing out that by the stipulation the defendant there relinquished a decision in its favor by the superior of the two courts which had passed on the issue, whereas in the case before us there had been but one judgment and that in favor of the plaintiffs. This distinction does not in our view satisfactorily dispose of the New York case. It is difficult, if not impossible, to escape the force of the language of the court of appeals in considering the difference between an agreement for a judgment and one obtained in the regular course of court procedure. "The undertaking was to pay the judgment if it should be affirmed or the appeal should be dismissed and this under the circumstances referred to an affirmance or dismissal in the ordinary course of judicial procedure and not an affirmance or dismissal by consent of parties. The plaintiff was entitled to proceed on the appeal according to the usual practice. He could take an affirmance of the judgment by default, if the practice of the court permitted that to be done. But to construe the undertaking as permitting the parties to agree upon the judgment to be rendered would subject a surety to a hazard which could not, we think, have been contemplated."

Added force is to be given to this reasoning when it is understood that the New York court was passing judgment upon the effect of the same kind of a judicial practice in

affirming appeals by consent of the parties as that in our superior court in authorizing entry of judgments by consent of the parties. The court of appeals at the outset of its opinion points out that the affirmance of the judgment was by agreement of the parties without any intervention by the court. It says, at page 254: "It appears that the stipulation was made by the parties and their attorneys, and upon filing the stipulation, and upon application to the court made before the case was reached on the calendar, the court, without argument or consideration of the case upon its merits, directed the judgment above mentioned." Further on, at page 255, the opinion goes on to say: "It would sacrifice substance to form to hold that an affirmance obtained in this way was an affirmance within the true meaning of the undertaking. It was an affirmance by act of the parties, and not in any true or real sense an affirmance by judgment of the court. It was not the judicial sentence upon the rights of the parties contemplated by the undertaking."

It is evident from the well reasoned holding of *Foo Long* v. *American Surety Co.*, *supra*, that the determination of the question before us rests upon the true construction of the terms of the bond in accordance with established principles of construction applicable to contracts of suretyship. Applying these principles to the instant case, we can come to but one conclusion. The bond here contemplates the rendition of a judgment by the court and not one by agreement of the parties. This is a construction that is strict, it may be admitted, but it is in keeping with what this court has previously said in construing a bond to release an attachment,—*Wilson* v. *Fisk*, 22 R. I. 100—wherein it was held that a surety bond to dissolve an attachment must be construed strictly because the liability of the surety could not be extended.

We think this rule of construction especially imperative in construing bonds to release attachments in cases such as the instant one where it is sought to hold the surety to its

obligation thereunder. There is more danger of injustice in any relaxation of the rule in construing this class of bonds than in insisting upon a strict construction. The opportunity to collude and fraudulently compromise the dispute at the expense of the surety is greater where parties consent to the entry of a judgment. It is reasonable to suppose that this circumstance was in contemplation of the parties when they executed the bond. *Sauer* v. *Detroit Fidelity & Surety Co.*, 237 Mich. 697, has been cited to us by the plaintiff in support of a contrary construction but we do not think that the practical considerations discussed by the court in that case should have any weight with us. The one thing most important from a legal point of view is to determine what the terms of the bond fairly mean.

We are satisfied, in so far as the obligation of a surety on a bond to release an attachment is concerned, that there is a vital difference between a judgment agreed to by the parties and entered with the consent of the court and a judgment rendered by the court. We hold, therefore, that the judgment by submission in this case, solely by agreement of the parties, is not such a judgment as was contemplated by the parties by the words, "in case said judgment shall be rendered," employed in the bond given to release the attachment in the instant case.

The defendant's exceptions to the action of the superior court in sustaining the demurrer to its plea and in denying its motion for a directed verdict are sustained.

The plaintiffs may appear, if they shall see fit, on November 25, 1935, and show cause, if any they have, why the case should not be remitted to the superior court with direction to enter judgment for the defendant.

*Henry M. Boss, Jr., Francis W. Conlan*, for plaintiffs.
*Clifford A. Kingsley, Francis V. Reynolds*, for defendant.